IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 25, 2011 Session

**STATE OF TENNESSEE v. JAMES ALFRED REED, JR.**

**Appeal from the Criminal Court for Monroe County**
**No. 08443     Amy F. Reedy, Judge**

**No. E2010-01138-CCA-R3-CD - Filed July 18, 2011**

The Defendant, James Alfred Reed, Jr., was convicted by a Monroe County Criminal Court jury of the sale of one-half gram or more of cocaine within 1000 feet of a school, a Class A felony, and the sale of less than one-half gram of cocaine within 1000 feet of a school, a Class B felony. See T.C.A. §§ 39-17-417(a)-(b), -(i), 39-17-432(b) (2010). He was sentenced as a Range II, multiple offender to forty years' confinement for the Class A felony and to a concurrent term of twenty years' confinement for the Class B felony. On appeal, the Defendant contends that the trial court erred by (1) denying his motion for acquittal based on insufficiency of the evidence, (2) failing to instruct the jury on the lesser included offense of facilitation, (3) failing to instruct the jury on the missing witness rule, and (4) imposing the maximum length for each sentence. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

James O. Martin, III, Nashville, Tennessee (on appeal); Richard Hughes, District Public Defender (on appeal and at trial); and Jeanne L. Wiggins, Assistant District Public Defender (at trial), for the appellant, James Alfred Reed, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder and John H. Bledsoe, Assistant Attorneys General; Steven Bebb, District Attorney General; and James Stutts, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the trial, Vonore Police Lieutenant Robby Lovingood testified that he investigated narcotics cases. He said that on June 20, 2008, a confidential informant called him and said,

"I've got a guy that sells crack cocaine." He said the alleged dealer lived in Blount County. He said that he called the Blount County Police to see if they were interested in investigating but that they declined because they were too understaffed. He said that he asked the informant if the transaction could be in Vonore and that the informant agreed. He said they agreed on a location they previously used because it was on the highway with a good surveillance spot.

Lieutenant Lovingood testified that he and the confidential informant met at the Wil-Sav Drug Store in Vonore off Highway 411 near Vonore Elementary School at about 8:00 p.m. He said that he was in contact with the informant before arriving at the scene but that he did not see the Defendant until he arrived. He said he wore a body wire and took currency that he photocopied for identification purposes. He said he paid the Defendant $220 for the crack cocaine.

Lieutenant Lovingood testified that he thought the confidential informant and the Defendant arrived in a van. He said he and the informant arrived at about the same time, got out of their vehicles, and greeted each other. He said he asked the informant if the man in the van was the one selling crack. He said that he entered the driver's seat of the van and that the Defendant was the only person in the van. He said he did not see where the informant went during that time.

Lieutenant Lovingood testified that he did not give his real name or tell the Defendant he was a police officer. He said he pointed out Vonore Elementary School and told the Defendant he was a teacher there. He said that he asked if the Defendant had what he needed and that the Defendant looked at and pointed his finger at the floorboard. He said the Defendant would not speak. He said he looked at where the Defendant pointed and saw a plastic bag containing crack cocaine.

Lieutenant Lovingood testified that he and the Defendant left the parking lot at about the same time. He said he put the crack cocaine in a cellophane bag, sealed it, took it to the Vonore Police Department, placed the cellophane bag inside an evidence bag, put it in the evidence locker, and had it transported to the Tennessee Bureau of Investigation (TBI). He said that Vonore Police Officer Shane Carr transported items to the TBI laboratory for the department and that to his knowledge, Officer Carr transported the evidence bag. He identified the examination request he completed for the TBI laboratory and the TBI laboratory's report and said that both were dated June 20, 2008.

Lieutenant Lovingood testified that on June 26, 2008, the confidential informant contacted him and arranged a second meeting. He said he met the informant and the Defendant between 9:00 and 9:30 p.m. at the Wil-Save Drug Store in Vonore. He said the

informant drove the Defendant to the meeting in the same van as on June 20. He said he photocopied the currency for identification and wore a body wire. He said that the informant left before the transaction and that he was alone in the van with the Defendant. He said that he left $80 in the van and that he left the van with a plastic bag containing crack cocaine. After he left the van, other police officers took the Defendant into custody.

Lieutenant Lovingood testified that he took the cocaine to the Vonore Police Department, placed it in an evidence bag, and put it in the evidence locker. He identified the evidence bag and said Officer Carr transported the evidence bag to the TBI laboratory. He identified the June 26, 2008 examination request and the laboratory report he received on the sample.

Lieutenant Lovingood testified that during one of the two transactions, the Defendant told him that if he set the money on the floor, it would not be a "sell and delivery." He said he was not sure if this conversation took place during the first or second transaction but that the tape would provide that information. He said he put the money on the floorboard and took the crack cocaine. He said that when he left the van, the Defendant was the only person inside.

Lieutenant Lovingood testified that students attended Vonore Elementary School daily and that it was within 1000 feet of the Wil-Save Drug Store. He said that he had measured the distance but that he did not remember the exact measurement. He said the store property connected to the school property.

On cross-examination, Lieutenant Lovingood testified that he was not with Officer Carr when Officer Carr took the evidence to the TBI laboratory. He said that he was trained to conduct undercover drug operations but that no training existed for working with confidential informants. He agreed he investigated informants before working with them. He agreed that some informants tried to help themselves after being charged with crimes and that other informants were paid money by law enforcement. He said the informant in this case was paid for both transactions. He did not remember how much the informant was paid but said the department typically paid $100 for an "indictment bust."

Lieutenant Lovingood testified that the confidential informant also worked with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and the Drug Enforcement Administration (DEA). He said that the informant called him a couple of times a week when the informant found a methamphetamine laboratory or someone selling drugs. He said that he worked with the informant for slightly less than a year and that the informant set up other drug "busts," although he did not remember if those were before the Defendant's arrest. He said that he did not investigate the informant's employment but that the informant told him

he worked in construction. He said he did not administer a drug test on the informant. He said that he met with the informant in person many times but that he only talked to him about the Defendant on the telephone.

Lieutenant Lovingood testified that he recorded transactions using either a body wire or a digital recorder. He said that the body wire was a little box with an antenna and wire running from it, that he could hide it in his clothes or hand, and that it picked up the conversation of the person wearing the wire and those around him. He said that the transmission from the body wire could be heard in "real time" from about a quarter-mile away but that weather and background noise could affect clarity. He said that he also had digital recorders but that he did not have enough for all cases. He said that he had a camcorder but that he could only use it to record a transaction if he could hide the camera.

Lieutenant Lovingood testified that both transactions with the Defendant occurred in the evening but that it was not "pitch dark." He agreed the only information he knew about the Defendant before the first transaction was what the confidential informant told him. He said he knew the Defendant did not have a driver's license and would not drive to the meeting. He said that he did not investigate the Defendant's background until after the arrest and that then he only investigated the Defendant's criminal history.

Lieutenant Lovingood testified that he did not monitor any conversations between the confidential informant and the Defendant. He said he did not have an opportunity to search the informant's van before either transaction. He said he set the ground rules with the informant, including the requirement that the informant leave before each transaction. He agreed it was ideal to search an informant and his vehicle before a transaction to ensure that any drugs found did not belong to the informant. He said he could not search the informant before the transactions in this case because he did not have jurisdiction to search people and arrange deals in Blount County.

Lieutenant Lovingood testified that June 20, 2008, was a Friday and that June 26 was a Thursday. He agreed the elementary school was not in session for the summer. He said that he had used the Wil-Save Drug Store parking lot for other drug transactions, that he had measured the distance from the store to the school at under 1000 feet, and that no fence separated the store and the school.

Lieutenant Lovingood testified that the confidential informant, the Defendant, and he did not discuss either transaction when all three were together. He said that he did not remember exactly what he and the informant said when they greeted each other but that he remembered pointing toward the Defendant, who was still in the van, and asking if the informant had him "hooked up." He said he told the Defendant he was the informant's

cousin. He said that during the first transaction, he told the Defendant the crack cocaine was for his wife or girlfriend in order to keep the Defendant from asking him to smoke some.

Lieutenant Lovingood testified that he searched the confidential informant and the informant's van after the second transaction but that he did not search after the first transaction. He said the police ordered the informant and the Defendant to take off their shoes in order to search them thoroughly. He said that when the Defendant was arrested, the Defendant had only his clothes, a marijuana pipe, and a cast on his arm. He said that the Defendant had no money in his possession at the time of the arrest and that the police found no additional drug paraphernalia. He said that the cocaine in the first transaction weighed 1.3 grams and that the crack cocaine in the second transaction weighed 0.3 grams.

Lieutenant Lovingood testified that he did not recover the money after the first transaction but that he recovered the money from the van floorboard near the passenger seat after the second transaction. He said that after the first transaction, he paid the confidential informant by sending an officer to him with the money. He said that after the second transaction, he "took down" the informant as well as the Defendant to make it look like the informant did not set up the Defendant. He agreed the informant had a cell phone and had met him in Vonore before. He said that all he knew about where the drugs originated was that they came from Alcoa in Blount County.

On redirect examination, Lieutenant Lovingood testified that a "buy bust" referred to when the police arranged a controlled purchase, in which the officer buying the drugs gave a take-down signal to other officers, who then took the suspect into custody. He said the Defendant's arrest on June 26, 2008, was the result of a buy bust. He said he decided to arrange the buy bust for the second transaction because he wanted to show that the Defendant sold the drugs more than once but also because he did not want to waste drug fund money by arranging additional transactions. He said he also needed to arrange the drug bust to obtain complete identification of the Defendant that he could not obtain from the confidential informant. He said that he was the designated buyer for the buy bust and that the informant was not involved in the transaction. He agreed he arranged each transaction to be between the Defendant and him only.

On recross-examination, Lieutenant Lovingood testified that he often had confidential informants purchase drugs for him because many suspects in his area recognized him. He said he searched informants before they purchased drugs in those situations. He said that in this case, the Defendant did not know him, which allowed him to speak with the Defendant about the drugs and purchase the drugs. He agreed he did not record what happened with the confidential informant before the transactions.

Deborah White, a forensic technician with the TBI Crime Laboratory in Knoxville, testified that her job was to receive evidence and maintain a chain of custody. She said that after she received items of evidence, she put them in a secure vault and that only laboratory technicians and their supervisor were allowed in the vault. She said that evidence stayed in the vault until it was checked out to an analyst and that she checked out the two evidence bags in this case to the analyst, Michael Bleakley. She said that after Mr. Bleakley finished his report, he returned the property to the vault and that she checked it back into the vault. She said that the evidence stayed in the vault until the requesting officer picked it up and that a laboratory technician checked the evidence out to the officer. She agreed the protocol she described was standard for the TBI crime laboratory.

On cross-examination, Ms. White agreed that the purpose of maintaining the chain of custody was to ensure that the evidence the laboratory received remained the same for testing and for its return to the requesting agency. She checked the laboratory reports and said Officer Carr submitted the evidence.

Michael Bleakley, an expert in the field of forensic drug chemistry, testified that he worked with the TBI Crime Laboratory in Knoxville and that he tested the substance from the first transaction. He said the substance weighed 1.3 grams. He said he tested the substance using UV spectrophotometry and infrared spectrometry, which revealed that the substance was cocaine base. He said that he tested the substance from the second transaction, that the substance weighed 0.3 grams, and that tests revealed it was cocaine base.

The jury convicted the Defendant of the sale of one-half gram or more of cocaine within 1000 feet of a school and the sale of less than one-half gram of cocaine within 1000 feet of a school. The trial court imposed an effective sentence of forty years' confinement. This appeal followed.

## I

The Defendant contends that the trial court erred by denying his motion for acquittal because the State failed to establish beyond a reasonable doubt that the drug transactions occurred within 1000 feet of a school. He argues that the State failed to present evidence that Lieutenant Lovingood knew of the school's accreditation or standing and that Lieutenant Lovingood was not qualified to testify that Vonore Elementary School was a school as described by the Drug-Free School Zone Act. See T.C.A. § 39-17-432(b)(1). The State contends that the evidence was sufficient to support the convictions because Lieutenant Lovingood's testimony was sufficient to show that the Defendant's drug transactions occurred within 1000 feet of a school as described by the Act. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). We do not reweigh the evidence but presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. <u>See</u> <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility are resolved by the jury. <u>See</u> <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997).

The Drug-Free School Zone Act states that when an offense involving a controlled substance, in violation of T.C.A. § 39-17-417,

> occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation.

T.C.A. § 39-17-432. The statute contains no requirement that the school be in session at the time of the drug transaction. <u>See id.</u>; <u>State v. Smith</u>, 48 S.W.3d 159, 169 (Tenn. Crim. App. 2000) ("The language of the Act unambiguously imposes enhanced criminal penalties for drug offenses occurring inside the school zone regardless of the timing of the drug offense.").

The Defendant relies on <u>State v. Fields</u> for his premise that a witness's suggestion that a structure is a school is not sufficient evidence to show that the structure is actually a school. <u>See</u> 40 S.W.3d 435 (Tenn. 2001). In <u>Fields</u>, our supreme court held that "the testimony by the State's witness as to the close proximity of the drug sale to a school, standing alone, is insufficient evidence to overcome the presumption of alternative sentencing." <u>Id.</u> at 442. As the Defendant acknowledges, the holding in <u>Fields</u> is distinguishable from this case because the defendant in <u>Fields</u> was neither indicted for nor convicted of violating the Drug-Free School Act. <u>See</u> <u>id.</u> at 440. The pertinent issue in <u>Fields</u> concerned the denial of alternative sentencing and not whether, based on the evidence, a rational trier of fact could have determined that the structure was a school. <u>See</u> <u>id.</u> We note also that the drug task force agent who testified regarding the school's proximity in <u>Fields</u> stated only the school's nickname and distance from the drug transaction "as the crow flies," with no description of the type of school and with no explanation of how he knew the distance. <u>Id.</u> at 437. The Defendant's reliance on <u>Fields</u> is unavailing.

As the Defendant notes, the State has often used the testimony of a school official to establish that a structure satisfied the Drug-Free School Zone Act's description of a school. See, e.g., State v. Jermaine Rashad Carpenter, No. E2007-02498-CCA-R3-CD, Sullivan County, slip op. at 2 (Tenn. Crim. App. Feb. 11, 2009) (including testimony of the school's director of student services), app. denied (Tenn. Aug. 17, 2009); State v. Charles Lincoln Faulkner, No. E2006-02094-CCA-R3-CD, Sullivan County, slip op. at 4 (Tenn. Crim. App. June 2, 2008) (including testimony of the school district's community relations coordinator); State v. Antonio Rico Walls, aka Rico, No. M1998-00358-CCA-R3-CD, Montgomery County, slip op. at 6 (Tenn. Crim. App. June 20, 2002) (including testimony of the school's principal), app. denied (Tenn. Nov. 12, 2002). This court, however, has recently stated: "While this court has affirmed school-zone convictions where the proof included testimony from an employee of the school about its operation, our courts have never held that doing so was required." State v. Calvin E. Bryant, Jr., No. M2009-01718-CCA-R3-CD, Davidson County, slip op. at 14 (Tenn. Crim. App. Nov. 1, 2010) (holding a metro planning analyst's testimony regarding the location of two schools to be sufficient evidence of the schools' existence), app. denied (Tenn. Apr. 13, 2011). We note, as well, that our supreme court upheld the sufficiency of the evidence for a violation of the School-Zone Act when evidence of the school's existence was based on a police detective's testimony. See State v. Vasques, 221 S.W.3d 514, 518-19, 523 (Tenn. 2007).

In the light most favorable to the State, the proof shows that the Defendant's drug sales occurred in a store parking lot that was within 1000 feet of real property that was part of an operational elementary school. Lieutenant Lovingood testified that the Wil-Sav Drug Store's parking lot adjoined the property of Vonore Elementary School and that no fence divided the two properties. He said that he measured the distance between the store parking lot and the school and that the distance was less than 1000 feet. We conclude that a rational trier of fact could have found beyond a reasonable doubt that the Defendant sold cocaine within 1000 feet of a school as defined by the Drug-Free School Zone Act.

## II & III

The Defendant contends that the trial court erred by failing to instruct the jury on the lesser included offense of facilitation and on the missing witness rule. He argues that the trial court's failure to give these instructions prevented him from presenting a defense and violated his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and article one, sections eight and nine of the Tennessee Constitution. Initially, the State contends that the Defendant waived both issues by failing to request instructions on facilitation and a missing witness. The Defendant responds that he did not waive the issues because he requested the instructions at the trial both orally and in writing. We agree that the record reflects that the Defendant did not waive the issues.

**A**

The Defendant contends that the trial court erred by failing to give an instruction on the lesser included offense of facilitation because the evidence was sufficient to show that he facilitated the sale by offering substantial assistance to the confidential informant. The State contends that the evidence did not support a facilitation instruction because a confidential informant lacks the intent necessary to commit a felony and therefore cannot be an accomplice. We agree with the Defendant that some evidence existed that a rational trier of fact could accept as proof of facilitation, but we do not agree that the evidence was sufficient.

In criminal cases, the trial court has the duty to charge the jury on all of the law that applies to the facts of the case. See State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992) (citing State v. Thompson, 519 S.W. 2d 789, 792 (Tenn. 1975)). Anything short of a complete charge denies the defendant his constitutional right to a trial by jury. See State v. McAfee, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987). An erroneous jury instruction may deprive the defendant of the constitutional right to a jury trial and is subject to a harmless error analysis. See State v. Garrison, 40 S.W.3d 426, 433-34 (Tenn. 2000).

The trial court had the duty to instruct the jury on any lesser offense included under the greater, provided the proof supported the charge. State v. Burns, 6 S.W.3d 453, 464 (Tenn. 1999). Facilitation of the offense charged is a lesser included offense. See id. at 466-67. If a court determines that an offense is a lesser included offense, the trial court must conduct the following two-step analysis in order to determine whether the lesser included offense instruction should be given:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Id. at 469. If a trial court improperly omits a lesser included offense instruction, constitutional harmless error analysis applies, and the State must show that the error did not affect the outcome of the trial beyond a reasonable doubt. State v. Ely, 48 S.W.3d 710, 725 (Tenn. 2001). "In making this determination, a reviewing court should conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory

-9-

of defense, and the verdict returned by the jury." State v. Allen, 69 S.W.3d 181, 191 (Tenn. 2002).

Tennessee Code Annotated section 39-11-403(a) (2010) provides that a person is responsible for facilitation of a felony if he knows that "another intends to commit a specific felony" and "furnishes substantial assistance in the commission" of that felony. In denying the Defendant's motion for a facilitation instruction, the trial court stated:

> [W]e have a complete absence of accomplice proof. We have an undercover informer working under the direction of a public authority, and in this case it's Officer Lovingood. We have a hand to hand sale with that same public authority, which is Robby Lovingood, the witness that testified. So I don't see proof here in the record to support any facilitation because all we have is an undercover informant that's talked about that didn't even testify and an officer. We have no accomplice . . . [and] have no accomplice proof.

After finding a "complete absence" of proof that the Defendant had an accomplice to assist, the trial court denied the facilitation instruction under the first step of the Burns analysis because it determined that no evidence existed that reasonable minds could accept as proof of facilitation. See Burns, 6 S.W.3d at 469.

The Defendant argues that Officer Lovingood's testimony provided sufficient evidence that the Defendant viewed the confidential informant as an accomplice and himself as providing assistance. The Defendant relies on State v. Nash, in which our supreme court held that the trial court correctly instructed the jury on facilitation of marijuana possession. See 104 S.W.3d 495, 500 (Tenn. 2003). In Nash, the defendant and another person had entered an apartment together and returned to their car before the police stopped the car and found marijuana under the passenger seat and in front of where the defendant had been sitting. Id. at 497-98. The defendant told police on the scene that the marijuana was his, and he was the only one indicted. Id. at 500. The court held that the evidence supported a facilitation instruction because a jury could have believed that the defendant was assisting the other individual by obtaining the marijuana at the apartment, hiding it in the car, and accepting responsibility for the drugs. Id.

The Defendant argues that as in Nash, there was a defense argument to be made in this case that the confidential informant was in control of the drug transactions and was facilitated by the Defendant. Officer Lovingood testified that the informant contacted him, arranged the time and location of the meetings, and drove the van with the Defendant as his

passenger. This court has held that informants working under the direction of the police are not accomplices during the time that they are acting with the police to ensure "the conviction and punishment of [their] confederates." See Halquist v. State, 489 S.W.2d 88, 94 (Tenn. Crim. App. 1972), overruled on other ground by State v. Jones, 598 S.W.2d 209 (Tenn. 1980). In this case, though, the informant's actions surrounding the transactions were not all explained as to whether they were within his role of assisting the police. There was no evidence of how the informant convinced the Defendant to travel to Vonore or what happened to the money from the first sale. A defense theory could have been that the informant asked the Defendant to accompany him on a drug transaction or to watch that the cocaine was not stolen when the informant left the van. We note also that the informant's immunity from prosecution for the sale would not preclude a facilitation charge against the Defendant. See T.C.A. § 39-11-407(2) (2010); Nash, 104 S.W.3d at 500.

Within the second step of the Burns analysis, however, the evidence was not developed to support a facilitation theory. See State v. Allen, 69 S.W.3d 181, 188 (Tenn. 2002) (noting that for lesser included offenses, the "evidence, not the theories of the parties, controls whether an instruction is required."). In the light most favorable to the existence of the lesser included offense, the only proof a trier of fact could reasonably interpret as the Defendant's intended facilitation of the confidential informant's drug transaction is that the informant arranged the meeting place with the officer, that the Defendant was a passenger rather than a driver, and that the Defendant did not speak to Officer Lovingood during one of the transactions. Moreover, Officer Lovingood testified that the Defendant pointed to the cocaine on the van floorboard, did not protest when the officer exchanged the money for the cocaine, and stated during one transaction that if the buyer set down the money, the transaction would not be a "sell and delivery." We conclude that the evidence was insufficient for a reasonable trier of fact to find that the Defendant was facilitating a drug sale. The trial court did not err in denying the facilitation instruction.

**B**

The Defendant contends that the trial court erred by failing to instruct the jury on the missing witness rule and thus prevented the jury from inferring that the confidential informant's testimony would have been unfavorable to the State. The State contends that the instruction was not applicable because the informant was equally accessible to both parties. We agree with the State.

Under the missing witness rule, a party is entitled to argue that if it is peculiarly within one party's power to produce a witness whose testimony would naturally be favorable to that party, the failure to call that witness creates an adverse inference that the testimony would have been unfavorable. State v. Francis, 669 S.W.2d 85, 88 (Tenn. 1984) (citing Graves v.

-11-

United States, 150 U.S. 118, 121 (1893)).  Under the same criteria, a party may request that the trial court instruct the jury regarding the adverse inference of a missing witness.  See State v. Middlebrooks, 840 S.W.2d 317, 334 (Tenn. 1992), overruled on other ground by State v. Stout, 46 S.W.3d 689 (Tenn. 2001).  Generally, three conditions must be met before the inference is allowed: (1) the witness had knowledge of material facts, (2) the relationship between the witness and the party would naturally incline the witness to favor the party, and (3) the witness was available to the process of the court for the trial.  See Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979).

The Defendant argues that the confidential informant met all three conditions of the missing witness rule.  The State argues that the informant did not meet the conditions because he could not have testified to any material facts not established by Officer Lovingood and because his testimony would have been as likely to favor the Defendant as the State.  We agree with the Defendant that the informant met the three threshold conditions.  First, the informant had knowledge of his conversations with the Defendant before the drug transactions, of how he convinced the Defendant to travel to Vonore in the van the informant drove, and possibly of how the cocaine came to be on the van's floorboard.  Second, the informant's relationship with the police, in which he was paid to set up the Defendant, would more naturally have inclined his testimony to favor the State.  Third, there is no evidence in the record that the informant was unavailable to the court.

In fact, the confidential informant's availability to both parties is the reason we conclude that the missing witness instruction was not applicable.  In denying the Defendant's motion, the trial court stated that there was no evidence that the informant was "within only the power of the state or the defendant."  In order to satisfy the Delk requirements, "the evidence must show that one of the parties has peculiarly available to him a witness with peculiar knowledge of the material facts at issue."  State v. Eldridge, 749 S.W.2d 756, 758 (Tenn. Crim. App. 1988) (emphasis added); see also State v. Overton, 644 S.W.2d 416, 417-18 (Tenn. Crim. App. 1982) (holding that the missing witness instruction was not applicable when the witness was "equally available to either party").  In Eldridge, this court concluded that a confidential informant whose identity was known to the defendant was available to be called as a witness by either party and that the defendant could not "expect to profit, under the missing witness inference, from his own determination not to call the informant as a witness."  749 S.W.2d at 758.

The Defendant and the confidential informant knew each other and traveled together to the scene of both drug transactions.  The Defendant presented no evidence that the informant's identity was unknown to him or that any circumstance prevented him from calling the informant as a witness.  For these reasons, we conclude that the trial court did not err in denying the Defendant's request for a missing witness instruction.

## IV

The Defendant contends that the trial court erred by imposing the maximum length for each sentence. The State contends that the trial court did not err because the sentences are consistent with the purposes and principles of the Criminal Sentencing Reform Act. We agree with the State.

At the sentencing hearing, Danny Isball, the presentence investigation officer, testified that the Defendant's criminal record included five prior felony convictions and various misdemeanor convictions. He said the Defendant reported using cocaine on a daily basis from the age of thirty-three in 1991 until June 2008. He said the Defendant had been admitted to three different facilities for treatment or rehabilitation.

On cross-examination, Mr. Isball testified that in preparing the presentence report, he gave the Defendant the questionnaire at the jail and picked up the questionnaire after the Defendant completed it. He said that he spoke with the Defendant enough to ask if he had completed the questionnaire but that he could not be sure he had gone over every item. He noted from the report that the Defendant was employed from June 1994 to January 1996 as a finisher at BTR in Maryville and that the Defendant gave his reason for leaving as a "medical nervous breakdown." He said that the Defendant did not provide him with BTR's contact information for confirmation and that the Defendant gave no other employment history. He said the Defendant's prior felonies included two convictions for sale of a Schedule II drug, one for delivery of a Schedule II drug, one for aggravated rape, and one for possession of stolen property valued over $100. He said the presentence report did not include information of any violations of probation or parole.

The State filed a notice of intent to seek enhanced punishment based on the Defendant's criminal history. The Defendant requested application of one mitigation factor, that the Defendant's criminal conduct neither caused nor threatened bodily injury. The Defendant also asked the trial court to consider his history of substance abuse.

In sentencing the Defendant, the trial court stated:

> [T]he defendant does have a previous history of criminal convictions or criminal behavior in addition to that necessary to establish the appropriate range, certainly more than what is needed to establish the range. I do not find any mitigating factors. Also he's not entitled to alternative sentencing, but I also want to say it is relevant to the Court that I feel as though he fails to accept responsibility for his actions in this case.

. . .

He is an offender whose record of criminal activity is extensive and so that is a basis upon which this Court could sentence him consecutively. He was convicted, and I want to say all this "he didn't know where he was." Mr. Lovingood was a very strong and a very good witness for the state of Tennessee, and I don't even have to look at notes or read transcripts him sitting right there saying he told him "I teach at that elementary school right there," which I thought was, you know, "right there," not just within a 1000 feet.

. . .

[T]he defendant, when he came into Monroe County was alerted by Mr. Lovingood that he was a teacher right there at that elementary school, and there's nobody that's going to convince me he didn't say that. Mr. Lovingood was an extremely credible and believable witness, and a strong witness for the state of Tennessee as well. And I can also say he was a strong witness in the opinion of those jurors who tried this case, and I certainly agree with their opinion about that because I felt the same thing. I bothered to make a note of it because at that point I found it a little incredible that someone with a prior history like Mr. Reed has wouldn't cut a trail and head out of town. He's familiar with the criminal justice system. Nobody was luring him into a situation that he wasn't familiar with.

. . .

He was convicted in Count One of an A felony that carries from 25 to 40 years in the Department of [Correction]. He was convicted in Count Two of a B felony that carries from 12 to 20 years in the Department of [Correction]. In Count One I sentence him to the maximum that the law allows me to sentence him to within the range, 40 years in the Department of [Correction]. In Count Number Two I sentence him to 20 years in the Department of [Correction]. While I have made a finding that I believe would be completely justified for me to sentence him consecutively for a total of 60 years I am going to run it

concurrently for a total of 40 years in the Department of [Correction] as a Range II offender. . . ."

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d), -402(d) (2010). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The sentence imposed should be the least severe measure necessary to achieve the purpose for which the sentence is imposed. T.C.A. § 40-35-103(4).

In sentencing the Defendant to the maximum in the range, the trial court applied one enhancement factor: that the Defendant had an extensive previous history of criminal convictions and behavior. See T.C.A. § 40-35-114(1) (2010). The trial court applied no mitigating factors. See T.C.A. § 40-35-113 (2010).

The Defendant argues that the court's emphasis on the Defendant's criminal history and comments on the strong credibility of Officer Lovingood show that the court failed to consider the presentence report, arguments presented by the Defendant, and whether the sentence was deserved in relation to the seriousness of the offense. The record shows that the Defendant's criminal history was documented in the presentence report, as was his seventeen-year cocaine addiction and lack of success with substance abuse treatment. In emphasizing the officer's testimony regarding the Defendant's knowledge that he was selling crack cocaine in a school zone, the trial court emphasized the seriousness of such offenses. See Davis v. State, 313 S.W.3d 751, 762-63 (noting the seriousness accorded to violations of the Drug-Free School Zone Act by the Tennessee Legislature and that "it is entirely permissible–and legal–for a trial court, after considering mitigating and enhancement factors, to sentence a defendant who committed a drug offense in a school zone to the maximum term of years in the defendant's range."). As the trial court noted, it was within its discretion to order that the Defendant's sentences be served consecutively, but the court ruled that they be served concurrently instead. See T.C.A. § 40-35-115(b)(2) (2010). The Defendant has not shown that the sentences are improper.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE